UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

_____
:
**UNITED STATES OF AMERICA** :
ex rel. Dr. Norman E. Tullis, MD :
:
              **Relator/Plaintiff,** :
:
v. : **Civil Action No.:** 14-5160
:
: **FILED UNDER SEAL**
:
:
:
**COX HEALTH** :
3850 S. National Ave, Ste. 760 :
Springfield, MO 65807 :
CARE OF: Steven D. Edwards, :
Registered Agent :
3850 S. National Ave. :
Springfield MO 65807 :
:
**CASSVILLE MEDICAL** :
**CARE ASSOCIATES** :
75 Smithson Dr., #A :
Cassville, MO 65625-9429 :
CARE OF: Laurie Cunningham, :
Registered Agent :
75 Smithson Dr. :
Cassville, MO 65625-9429 :
:
**COX HEALTH CENTER CASSVILLE** :
75 Smithson Dr., P.O. Box 568 :
Cassville, MO 65625-9429 :
CARE OF: Laurie Cunningham, :
Registered Agent :
75 Smithson Dr. :
Cassville, MO 65625-9429 :
:
:
              **Defendants.** :
:
_____/

1

# FALSE CLAIMS ACT COMPLAINT

This is an action to recover damages and civil penalties on behalf of the United States of America ("United States") by Relator/Plaintiff Dr. Norman Tullis, M.D., by and through his attorney, Kenneth J. Haber, Esq., 12705 Fernberry Ln, Suite A, Boyds, MD 20841, and arising out of false claims presented by Defendants herein, under the Medicare program and other Federal Healthcare Programs. All Defendants are jointly and severally liable.

## JURISDICTION AND VENUE

1. This action arises under the provisions of 31 U.S.C. §§3729 *et seq.*, commonly called the False Claims Act ("FCA"). The FCA provides, among other things, that the United States District Courts have exclusive subject matter jurisdiction over actions brought under it.

2. Under 31 U.S.C. §3732(a), "[a]ny action under Section 3730 may be brought in any judicial district in which the defendant can be found, resides, transacts business, or in which any act proscribed by Section 3729 occurred."

3. Upon information and belief, the acts and omissions complained of herein occurred in various locations in Missouri, including but not limited to the cities of Springfield, Cassville and Monett, as well as elsewhere.

4. Under Subsection 3730(b)(2) of the FCA, this Complaint is to be filed in camera and to remain under seal for a period of at least sixty (60) days and shall not be served on the Defendants until the court so orders. The United States may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and information.

## PARTIES TO THE ACTION

5. Qui tam Plaintiff/Relator Norman E. Tullis, M.D., (hereinafter "Tullis" and/or "relator" and/or "Relator Tullis") is a citizen and resident of the State of Missouri. He specializes in internal medicine and is licensed to practice such in the state of Missouri. Relator Tullis brings this action on behalf of the United States and himself. He worked as a physician for Defendant Cassville Medical Care Associates [hereinafter, "CMCA-Rural" and/or "Cox Rural Health Clinic"] from 1993 to 2013 (at this time, he resigned). He worked as the Medical Director for Defendant Cox Health Center Cassville Hospital/Surgicenter [hereinafter, "CHCC-Outpatient" and/or "Cox Outpatient Clinic"] from 2004 to 12/31/10 (at this time, the medical and pharmacy directors' contracts were not renewed). Relator was also Medical Director of CMCA-Rural from approximately 1998 until 2010.

6. As required by Subsection 3730(a)(2) of the FCA, Relator has provided both the Attorney General and the United States Attorney for the Western District of Missouri, Southwestern Division, simultaneous with the filing of this Complaint, a statement of all material evidence and information which he possesses and that relates to the issues raised in this Complaint. The statement of evidence and information substantially supports the allegations made in the Complaint.

7. Established in 1906, Defendant Cox Health System ("Defendant Cox System" or "Cox System" or "Cox") is a not-for-profit health system based in Missouri. Defendant Cox System operates offices and/or clinics in various areas of Kansas as well as Arkansas. It offers a comprehensive array of primary and specialty care, including five hospitals and more than 80 clinics in 25 counties in southwest Missouri and northwest Arkansas. The health system includes Cox Medical Center South, Cox Medical Center Branson, Cox North Hospital, Meyer

Orthopedic and Rehabilitation Hospital, Cox Monett Hospital, Oxford HealthCare (the nation's second largest hospital-based home health agency), Home Parenteral Services (home infusion therapy), CoxHealth Foundation, Cox College, Cox HealthPlans and more. Cox Health System's clinics and hospitals are accredited by the Joint Commission on Accreditation of Healthcare Organizations.

8. Defendant Cox System's main office address is 3850 S. National Ave., Ste. 760, Springfield, Missouri, 65807.

9. Defendant CMCA-Rural is a federally qualified Rural Health Clinic located in Cassville, MO. CMCA-Rural is affiliated with and a subsidiary of Defendant Cox System. CMCA-Rural is owned by Cox-Monett Hospital, a Critical Access Hospital (hereinafter, "CMH") (CMH is also affiliated with and a subsidiary of Defendant Cox System). Defendant CMCA-Rural's main office address is 75 Smithson Dr., #A, Cassville, MO 65625.

10. Defendant Cox Health Center Cassville (hereinafter, "CHCC-Outpatient") is a large physician clinic located in Cassville, MO. It is affiliated with and a subsidiary of Defendant Cox System. CHCC-Outpatient is owned by Cox-Monett Hospital (CMH). Defendant CHCC-Outpatient's main office address is 75 Smithson Dr., P.O. Box 568, Cassville, MO 65625

11. CHCC-Outpatient is a physician outpatient clinic and outpatient diagnostic facility of CMH. It provides a wide range of medical services including: Rehabilitation services; preventive medicine; women's health; health maintenance; well-child checks; screenings and education; sports medicine; diabetes education; and same day surgeries. Procedures performed there include but are not limited to: colonoscopies; pulmonary function studies; gastroscopies; hearing/typanogram tests; dermatological procedures; ABI vascular studies; cardiac stress tests; ear lavages; and EKG 24-hour cardiac Holter monitor procedures. CHCC-Outpatient also

4

Case 3:14-cv-05160-SRB   Document 1   Filed 12/09/14   Page 4 of 17

includes a lab and provides diagnostic imaging services.

12. During all relevant times in this complaint, Defendants CHCC-Outpatient and CMCA-Rural are separate entities that are located and operating within the same physical building. Both are owned by Cox through its ownership of CMH..

13. Dr. Steve Edwards, M.D., (hereinafter "SE" and/or "Edwards" and/or "Dr. Edwards") is a citizen and resident of Missouri. He is a Medical Doctor, licensed to practice in the state of Missouri. During all relevant times in this complaint he was the Chief Executive Officer [CEO] of Defendant Cox. By this position, Dr. Steve Edwards is an agent and Officer of Defendant Cox System and acts on behalf of and for Defendants CMCA-Rural and CHCC-Outpatient, as well as Defendant Cox.

14. Defendant CHCC-Outpatient and Defendant CMCA-Rural are agents of Defendant Cox System.

15. Defendant Cox System, Defendant CHCC-Outpatient, and Defendant CMCA-Rural employ a variety of physicians and healthcare practitioners.

16. Defendant Cox System directly and by and through Defendants CHCC-Outpatient and Defendant CMCA-Rural provides and has rendered medical services to vasrious patients. Defendant Cox System, by its billing service (Regional Services Physician Billing Services, [RSPBS], located in Springfield, Missouri), has billed for and received payments for those services through private pay and public methods, including, but not limited to, Medicare and other federal healthcare programs. On information and belief, another billing company was employed to bill for various hospital technical components. This company's identity is unknown to Relator.

17. All Defendants are jointly and severally liable. Defendants are referred to collectively

5

herein as "Defendants".

## REIMBURSEMENT
## UNDER THE MEDICARE PROGRAM

18. The United States Department of Health and Human Services ("DHHS") administers federal Medicare programs under the Social Security Act ("the Act").

19. The Medicare program reimburses physicians for covered services and items rendered when they are determined to be medically necessary and reasonable.

20. The Medicare program does not pay for services and items rendered by a physician or others if those services are unreasonable or not medically necessary.

21. The Medicare Program will pay for Part B covered services provided by a physician's assistant or a technician in the practice as long as all of the "incident to" rules are met. When furnished in a hospital outpatient department, Medicare will only pay for diagnostic tests and other procedures, when they are furnished by or under the appropriate level of supervision of a licensed physician. 42 CFR 410.32(b)(1), and 410.28(e).

22. "Incident to" refers to a Medicare billing mechanism, allowing services furnished in an outpatient or physician's office setting to be provided by auxiliary personnel and billed under the provider's national provider identification (NPI) number. Incident to the provider's professional services means that the services or supplies are furnished as an integral, although incidental, part of the provider's professional services in the course of diagnosis or treatment of an injury or illness. The provider can include physicians, nurse practitioners, clinical nurse specialists, certified nurse midwives, physician assistants, clinical psychologists, clinical social workers and physical and occupational therapists. The Incident-to services must be provided under a provider's appropriate level of supervision; normally, the provider must be in the area where care is delivered and be immediately available to provide assistance and supervision.

6

Normally, the provider must initiate a course of treatment and the service provided by the auxiliary staff is follow up care; assisting in providing the plan of care.

23. "J-codes" refer to coding found in the Healthcare Common Procedure System Level III [HCPCS] used for the administration of certain prescription drugs. These codes refer to drugs administered other than by an oral method. Each of these codes begins with the letter "J".

24. Payment for Services for injections that are referred to as "J-codes" are included within the All Inclusive Rate (i.e. AIR) for a Rural Health Care facility under Medicare and many other programs. Under Medicare, these codes are not to be billed individually on a per-administration basis at a Federal Rural Health Care Facility; rather, they are included in the AIR.

## BACKGROUND AND RELATOR'S STATEMENT OF FACTS

### Cox Health System's Probation and Relators' Discovery of Double Billing of Techincal Fees by Cox Health System

25. Relator, Norman Tullis, M.D, was hired by Defendant Cox System as a Medical Director of Defendant CHCC-Outpatient starting in 2004. The allegations contained in this complaint are based upon the direct, independent, and personal knowledge of Relator Dr. Norman Tullis, M.D., and based upon his information and belief, obtained from his direct, independent, and personal knowledge predicated upon his observations of, experiences at and conversations concerning the various Defendants with their personnel.

26. Tullis also worked at Defendant CMCA-Rural as a physician from 4/15/93-11/29/10. He was also the Medical Director at CMCA-Rural from 1998 to 2010.

27. Defendant CMCA-Rural (Rural Health Clinic) and Defendant CHCC-Outpatient (Cox Outpatient Clinic) are separate and independent healthcare facilities, but both exist within the same building- and are subsidiaries of Defendant Cox System.

28. The billing for CMCA-Rural and CHCC-outpatient is done in Springfield, MO, by a billing company by RSPBS (owned by Cox). Another billing component handles CMH's hospital fees.

29. On or about July 21, 2008, in an administrative Corporate Intregrity Agreement between <u>OIG and Lester E. Cox</u>, Defendant(s) herein entered a settlement concerning prior violations of the The False Claims Act and the Medicare Program. Pursuant to the Corporate Intregrity Agreement of July 21, 2008, Defendants herein agreed to various repayments, restriction and compliance provisions with the Office of The Inspector General (OIG) and including the repayment with interest as to funds illegally billed and paid.

30. On or about September of 2010, Relator Tullis discovered that Defendants herein (along with Defendant Cox System's billing service) were double-billing to Medicare. Specifically, between 2003 and March 2010, various technical components of certain medical procedures were actually performed and actually billed for as being performed at Defendant CHCC-Outpatient. Additionally, Defendants falsely double-billed the same technical components a second time at a fictitious physician's office as if they had been performed at the fictitious physician's office and billed by a Medicare 1500 claim form. Additionally, the professional component was singularly billed as if it had been performed at the fictitious physician's office when in truth and fact both the technical and professional components were performed only at Defendant CHCC-Outpatient.

31. Relator immediately reported the billing violations to Steve Edwards, the CEO of Defendant Cox.

32. On Information and belief, Relator alleges that Defendants had known about the billing violations already for 6 months, but Defendant Cox System had no taken steps to correct

and report same. Some of these double billed procedures include but are not limited to: UGI Endoscopies, Colonoscopies, Skin Cancer Surgeries, Vasectomies, Rhinoscopies, Treadmill EST-exercise stress tests, etc.

33. On or about 9/2/10 Relator Tullis sent an email correspondence to Dr. Steve Edwards, the CEO of Cox. In this email correspondence, Relator Tullis indicated the foregoing billing violations he believed to be occurring.

34. After Relator Tullis' email to Dr. Edwards which indicated Cox's billing violations, Defendant COX reported the violations to CMS. However, Defendant Cox asserted to CMS that Relator Tullis and other medical directors at CHCC-Outpatient were responsible for the billing violations.

35. On or about 12/31/10, Relator's Medical Directorship contracts at CHCC-Outpatient and at CMCA-Rural were not renewed.

36. Additionally, on or about 12/31/10, all other Medical and pharmacy Directors' at Defendant CHCC-Outpatient were either terminated or their contracts not renewed.

**Defendant CHCC-Outpatient Billing for Pharmacy and Medical services without Physician Supervision**

37. Relator Tullis kept his position as a practicing physician at CMCA-Rural but Cox withheld payments from him and from other physicians practicing at CMCA-Rural on the basis that they were responsible for the repayment to CMS.

38. Upon termination of their Medical directorships, Defendant CHCC-Outpatient did not replace the missing Medical and Pharmacy Director positions. Defendant CHCC-Outpatient operated without the required directorship from December 31, 2010, until approximately January of 2014.

9

39. Defendants CHCC-Outpatient was no longer compliant with either the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) or with Medicare reimbursement rules, including incident-to rules.

40. On or about 12/31/10 until approximately January 2014, Pharmacy and physician services were being provided at CHCC-Outpatient by nurses, technicians and other non-physican personnel without the required physician supervision (i.e. in violation of Medicare's incident-to rules) and without physicians even being present or participating and without a pharmacist's supervision at CHCC-Outpatient.

**Double Billing of J-Codes By Defendant CMCA-Rural**

41. J Codes refer to the cost of administration of certain non-oral prescription medications.

42. Defendant CMCA-Rural, as a federally qualified rural health clinic, placed J codes charges into its cost reports. Such charge should not be included on a separate CMS 1500 claim form.

43. J codes are included in the All Inclusive Rate ("AIR") and paid by CMS to Defendant CMCA-Rural on a global per visit basis.

44. From 2008 and continuing to the present, Defendant CMCA-Rural also placed J code charges by physicians on CMS Claim form 1500 for individual physicians' services, as if they were not working at a facility classified as a federal rural health clinic. These charges were billed out of Defendant Cox System's billing office (RSPBS).

45. Starting in 2008 and continuing to the present, Defendants have caused Medicare to be charged twice for the same J-Code procedures (i.e. double-billing).

10

46. By placing J codes within cost reports as well as including said codes on CMS 1500 claim forms, Defendant CMCA-Rural is double-billing Medicare and other Federal Health Programs.

47. This started in 2008, when the Defendants herein, under the <u>OIG v. Lester E. Cox</u> (Corporate Intgrity Agreement), were placed under the agreement by the OIG and the Defendants herein had to repay CMS.

48. On information and belief, Relator Tullis believes Defendants herein are double-billing in order to obtain funds to pay for the fines and other charges incurred by Defendants under the Corporate Intgrity Agreement of <u>OIG v. Lester E. Cox</u>.

**CLAIM I**

**Billing For False and Untrue Technical and Professional Services**

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 48, as if fully set forth herein.

49. Defendants Cox Health System, and CHCC-Outpatient, between 2003 to on or about March 2010 and pertaining to specific patients to be determined, and pertaining to specific claims to be determined, because the records are unavailable to Relator, being in the possession of the Defendants, did knowingly and willfully present, and cause to be presented to officers and employees of the United States Government, false and fraudulent claims for payment and approval from Medicare and the other Federal Health Care Programs. These were false and fraudulent because various technical components were double billed for various Medicare patients and procedure by being both billed at CHCC-Outpatient and fictitious physician offices. These various false and fraudulent billings were false and fraudulent in that technical and

11

professional components were billed at fictitious physician office locations, when in truth and fact they were performed at CHCC-Outpatient. The Defendants knew them all to be false and fraudulent; all in violation of 31 U.S.C. §§3729 *et seq.* The Defendants were advised by employees and/or physicians and/or medical directors of the CHCC-Outpatient and CMCA-Rural of their illegal billings.

50. On September 15, 2010, CEO Steve Edwards advised the physicians and Medical Directors of CHCC-Outpatient and CMCA-Rural that there had been insignificant billings errors as set out above and even though the billing office was that of Cox that the physicians and medical directors had to be responsible because Cox was on a Corporate Integrity Agreement and if Cox acknowledge them, then Cox would look guilty. Edwards advised that Cox would take the money from the physicians and return it in the group and individual physicians' names. This would leave Cox clean in the eyes of CMS. However, because of this Cox did not pay back CMS monies but at most, the physicians did. Edwards further advised that he had spent the morning discuss the matter with Cox's attorney.

## CLAIM II

### Billing of Physician And Pharmacy Services Performed By Nurses, Technicians And Other Non-Physican Personnel without Physician and Pharmacist Supervision

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 48, as if fully set forth herein.

12

51. On or about December 2010 and continuing until the present, Defendants Cox Health System, CHCC-Outpatient, and CMCA-Rural, pertaining to specific patients to be determined, and pertaining to specific claims to be determined, because the records are unavailable to Relator and being in the possession of the Defendants, did knowingly and willfully present, and cause to be presented to officers and employees of the United States Government, false and fraudulent claims for payment and approval from Medicare and the other Federal Health Care Programs. These were claims for payment for Pharmacy and physician services that were being provided at Defendant CHCC-Outpatient by nurses, technicians and other non-physican personnel without the required physician and pharmacist supervision, in violation of Medicare's incident-to rules, and without physicians and without pharmacists being present or participating at Defendant CHCC-Outpatient, as described in this complaint; all in violation of 31 U.S.C. §§3729 *et seq.*

## CLAIM III
### Billing For False, Fraudulent and Untrue J Code Medical Services
### (i.e. Double Billing of Medical Services)

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 48, as if fully set forth herein.

52. Defendants Cox Health System, and CMCA-RURAL, from about 2008 and continuing to the present and pertaining to specific patients to be determined, and pertaining to specific claims to be determined, because the records are unavailable to Relator, being in the possession of the Defendants, did knowingly and willfully present, and cause to be presented to officers and employees of the United States Government, false and fraudulent claims for payment and approval from Medicare and the other Federal Health Care Programs. These were false and fraudulent in that Defendant CMCA-Rural, as a federally qualified rural health clinic,

13

placed and submit J code charges by physicians on CMS Claim forms 1500 for individual physicians' services, as if it was not a facility classified as a federal rural health clinic when in truth and fact it is so classified and Defendant placed J code charges into its cost reports and submitted them for determining its AIR rate and being paid for under its AIR as a Federal Rural Health Clinic; thereby, causing a double billing. The Defendants knew all of these charges to be false and fraudulent; all in violation of 31 U.S.C. §§3729 *et seq.* .

## CLAIM IV

### Conspiracy

Relator re-asserts, re-alleges, and incorporates herein by reference the allegations contained in Paragraphs 1 through 51, as if fully set forth herein.

53. From a time to be determined and continuing until the present, Defendants Cox Health System, CHCC-Outpatient and CMCA-Rural did combine, conspire and agree together and with each other to defraud the United States by violating 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) for the purpose of obtaining and aiding to obtain payment from the government and approval of a claim against the government and use of false claims against the government; all in violation of 31 U.S.C. § 3729(a)(1)(C), as set out in the preceding paragraphs herein which are fully incorporated herein by reference.

### Overt Acts

54. In furtherance of and to effect the object of the above cited conspiracy, the acts charged in paragraphs 1 through 52 which were committed by the various Defendants herein are alleged and incorporated herein as if fully set out as overt acts.

## CAUSATION AND DAMAGES AS TO ALL CLAIMS FOR RELIEF

55. As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, as stated herein and to be further presented at trial.

56. As a direct and proximate result of the foregoing, the United States Government has incurred substantial costs and has suffered substantial damages, due to Defendants' scheme and artifice to defraud the Medicare program as stated herein.

57. As a direct and proximate result of the foregoing, the Medicare program has expended substantial funds in reimbursing Defendants for the claims presented, which Defendants were not entitled to receive.

58. As a direct and proximate result of the foregoing, the Medicare program and other government healthcare programs have been harmed by Defendants' scheme and artifice to defraud, as stated herein, practiced against the United States Department of Health and Human Services and other government agencies.

59. As a direct and proximate result of the foregoing, Defendants are continuing to be reimbursed from Medicare and other government programs at amounts substantially greater than the Government programs ought to be charged, and in amounts to be determined, with additional damages to program beneficiaries for inflated co-payments.

**DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF**

Relator/Plaintiff respectfully demands a jury trial and pray for judgment against each Defendant named herein, as follows:

(a) That by reason of the violations of the False Claims Act as set out in this Complaint, this Court enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. §3729 plus 3 times the amount of damages which the Government sustains because of the act(s) of that person;

(b) That Relator, as Qui Tam Plaintiff, be awarded the maximum amount allowed pursuant to Section 3730(d) of the False Claims Act and/or any other applicable provision of law;

(c) That Relator be awarded all costs of this action, including reasonable attorneys' fees and costs of bringing this suit;

(d) That equitable relief be issued to prevent future violations by the Defendants; and

(e) That Relator/Plaintiff has such other relief as this Court deems just and proper.

Dated: 12-9-2014         Respectfully Submitted,


**BARTIMUS FRICKLETON ROBERTSON & GOZA**


BY: /s/ Anthony L. DeWitt
    Anthony L. DeWitt
    Missouri Bar No. 41612
    715 Swifts Highway
    Jefferson City, MO 65109
    Telephone: (573) 659-4454
    Facsimile: (573) 659-4460

    Kenneth Joel Haber, Esq.
    Attorney for Relator/Plaintiff
    Ct of Appls District of Columbia Bar # 324343
    PHV pending
    12705 Fernberry Ln, Suite A
    Boyds, MD 20841
    Ph: 301-670-0016

    ATTORNEYS for RELATOR